**John K. CALHOUN, individually and as attorney for the Estate of C. F. Calhoun, Appellant,**

**v.**

**Charles C. HERTWIG, Trustee, et al., Appellees.**

**No. 23347.**

United States Court of Appeals
Fifth Circuit.

June 28, 1966.

Rehearing Denied Aug. 9, 1966.

Extraordinary Motion for Rehearing
Denied Oct. 20, 1966.

258

Charles E. Watkins, Jr., Atlanta, Ga., for appellant.

Charles M. Cork, T. Baldwin Martin, Jr., Wallace Miller, Jr., Macon, Ga., Paul R. Ervin, Charlotte, N. C., for appellees.

Before TUTTLE, Chief Judge, BELL, Circuit Judge and KILKENNY,* District Judge.

GRIFFIN B. BELL, Circuit Judge:

Appellants were the attorneys for the estate of C. F. Calhoun, a creditor involved in the reorganization under Chapter X of the Bankruptcy Act of Den-Nap Electric Mold Co. and two related corporations, Poplar Foundries, Inc. and Precision Recapping Equipment Co. They petitioned the District Court for $11,367.60 in attorneys' fees and $873.04 expenses to which they claim that they are entitled for services rendered in the reorganization proceedings. This appeal is taken under § 250 of the Bankruptcy Act, 11 U.S.C.A. § 650, from an order denying their claim.

The facts are that these corporations applied for relief in 1961 under Chapter X of the Bankruptcy Act. The dominant figures in each of the corporations were the majority stockholders who were also the chief executive officers. The three corporations were treated as one in the reorganization proceedings so as to eliminate any problem regarding inter-corporate debts or other obligations or arrangements. Appellants, Messrs. Calhoun, Russell and Watkins, participated in the proceedings as counsel for the estate of C. F. Calhoun, the father of one of appellants. Mr. Calhoun was a stockholder in and a creditor of Den-Nap by reason of its purchase of certain patent rights and equipment from him. The exact amount of his claim was disputed as we shall see. The creditor corporations were operated by a trustee from 1961 until the date of the completed reorganization in 1965.

On February 12, 1965, a meeting was held to discuss an initial reorganization plan suggested by the debtors. This plan provided for payment to the general creditors of forty cents on the dollar, together with full payment of all secured and priority claims and costs of administration. Substantially all of the Calhoun claim was in the forty per cent category. The trustee and all creditors except the Calhoun estate were willing to accept the plan. Appellants, as the Calhoun attorneys, considered the plan unfair and refused to accept it. They then contacted numerous companies in an effort to find a purchaser for the debtors' assets so as to make possible a better plan. They were successful in finding a purchaser, the Super Mold Corporation of California. This company in fact came to Macon and inspected the properties on the very next day, February 13, 1965. A sale to Super Mold would have made possible a reorganization plan which would more nearly satisfy the claims of the creditors.

Appellants drafted and filed a plan on March 22, 1965, which was based on the increased assets from the sale to Super Mold Corporation. The creditors' committee submitted their own revised plan on March 26, 1965. On March 30, 1965, a hearing was held at which time the court had all the submitted plans before it. After explanation of the three plans the court adjourned until the afternoon of the same day. This recess was taken for the purpose of giving the interested parties an opportunity to reach a mutually satisfactory agreement. The difficulty in agreeing on a plan stemmed from the fact that the amount of the Calhoun claim was disputed. The disputed amount was approximately $26,000 which was largely made up of interest accruing since the initiation of the reorganization proceedings in 1961 plus attorneys' fees on the accelerated portions of certain notes. Finally, an agreement was reached which provided that

---

* Of Portland, Oregon, sitting by designation.

all of the other general creditors would voluntarily reduce their claims by eleven per cent in order to raise the $26,000 which the Calhoun estate claimed and thus pay the Calhoun claim in full.

When the hearing was reconvened in the afternoon the compromise agreement was explained; and the parties agreed to submit to the court a written plan embodying the features of it. At this time the following colloquy took place between the court and Mr. Calhoun, counsel for his father's estate:

"THE COURT: The other thing I want to be sure of, if this plan goes through, Mr. Calhoun, every matter concerning which you have suggested any issue and every question which you have raised by any of the pleadings which you have filed in connection with the matter or any which could have been raised which you have not raised, will be terminated and disposed of; is that understood?

"MR. CALHOUN: Your Honor, I'm happy to be bound by the agreement and upon the approval of a plan which provides $98,724.15 in cash, everything that we have in this proceeding will be dismissed.

"THE COURT: Well, when you say 'in cash', you mean at the same time all the other creditors are paid?

"MR. CALHOUN: At the same time as the other creditors.

"THE COURT: At the same time all the other creditors are paid.

"MR. CALHOUN: Yes sir, and yet, we wish to reserve our right to dismiss until that date.

"THE COURT: Oh, yes, but the plan, when we talk about 'the plan', when the plan is approved, if the Court approves it, that terminates every question which you have raised or could have raised.

"MR. CALHOUN: Yes, sir, I would rather state it that when a distribution is made under the plan, that settles everything, terminates everything.

"THE COURT: All right, I wanted to be sure * * *"

Counsel for the debtors objected to this payment to the Calhoun estate on the ground of unjust enrichment but counsel for the trustee and also for the creditors' committee recommended that it be approved. Counsel for the creditors' committee stated that he acceded to avoid further delay and to recognize the efforts of counsel for the Calhoun estate in finding Super Mold and thus bringing about a better payment plan for the creditors. The plan was approved by the court, unanimously accepted by the creditors and confirmed by the court.

At the time of this colloquy between the court and Mr. Calhoun, the proposed plan of reorganization submitted by Mr. Calhoun, as executor of his father's estate and as counsel for the estate, was before the court. It contemplated a purchase of the stock of the reorganized corporation by Super Mold Corporation, and provided for fees as follows:

"Subject to the agreement of the successful purchaser and/or the order of the Court, the Trustee shall deliver to the authors of this Plan such amount of the Class A Common Stock in the Reorganized Corporation as the parties may agree upon as the reasonable fee for the work done in connection with the prosecution of the Petition to Confirm the Re-Consolidation of all the Assets and Eliminate the Claims of Dennis and Mattox in this proceeding, and in connection with this Plan of Reorganization for the three corporations."

The proposed plan which included this suggested fee arrangement was filed on March 22, 1965. On March 9, 1965 a petition had been filed by Mr. Calhoun to set aside certain claims of the majority stockholders against the corporation and the suggested plan of reorganization was spelled out to some extent in that pleading. A claim for attorneys' fees to be payable in stock was asserted therein. Moreover, on July 3, 1964, Mr. Calhoun advised counsel for the trustee in writ-

ing that counsel for the Calhoun estate were entitled to attorneys' fees to the extent that they had contributed to the reorganization. Counsel for the trustee replied on July 7, 1964 that any claim for attorneys' fees which they might make should be submitted to the court. Thus, there was no doubt that these lawyers had fees in mind at the time of the colloquy with the court. Nevertheless, on April 29, 1965 appellants applied for attorneys' fees and costs. A hearing on their application was held on May 4, 1965, with the result that the application was denied.

The court gave two reasons for the denial. First, the court deemed the question foreclosed by the foregoing colloquy; and second, the claim was denied as a matter of law on the ground that the services rendered had been, when considered in light of their primary purpose of representing their client, " * * * too remote, unintended and incidental to the primary purpose * * * to be susceptible of valuation * * * or compensable by allowance in this proceeding."

We think the District Court erred in finding that as a matter of law appellants' services were too remote and incidental to be compensable. In being the only objecting party to the first proposed plan, and in later making possible a much more desirable plan through negotiation with Super Mold Corporation, appellants benefited not only their own client but also the other creditors. The record conclusively shows that they did substantially contribute to the plan of reorganization. As was stated in In re Consolidated Motor Parts, Inc., 2 Cir., 1936, 85 F.2d 579, " * * * [t]he question is whether the work in connection with the plan has been performed in good faith and has substantially contributed to the result finally achieved."

We hold, however, that the order of the District Court denying the award of attorneys' fees and costs was correct and should be affirmed. The agreed settlement, as stated above, was made possible by the fact that the general creditors accepted an eleven per cent reduction of their claims in order to provide the additional $26,000 on the Calhoun estate claim. Appellants contend that this sum was rightfully due and should not militate against their present claim. However, it appears that the general creditors made the concession in part in recognition of the contribution made by appellants in procuring the Super Mold bid. And it is worthy of note that the $26,000 in dispute, based on post Chapter X interest as well as attorneys' fees, included, as near as can be determined from the record, some $10,000 in attorneys' fees.

The approach which we take to this matter is stated in 6A Collier, Bankruptcy, § 13.02 at pp. 904–908, as follows:

"In determining the allowances to be made, Chapter X * * * confers upon the judge a broad discretion, with which an appellate court will not interfere except for an abuse thereof or an erroneous application of the law * * *. The mere fact, however, that a claimant is a person to whom Chapter X permits compensation or reimbursement to be given does not mean that the claimant must be accorded an allowance. Nor does participation in the proceedings, however rightfully, create any absolute right to compensation or reimbursement * * *.

* * * * * *

"Since the circumstances surrounding the particular claim will govern, it is impossible, of course, to lay down any hard and fast rules which will fit all cases * * *. Nevertheless, the judge should endeavor to exercise fairly the discretion lodged in him with the double purpose of doing equity to the distressed debtor and its security holders and at the same time rewarding the proper activities of those participating in the proceedings."

On the face of things it would appear that appellants did produce such

benefit to the estate as would bring them within the fee allowance section, 11 U.S.C.A. § 643,[1] especially in light of the liberal application of the test " * * * to insure the vigorous representation of all security holders and the protection of minority groups." 6A Collier, Bankruptcy, § 13.02 at pp. 914–915. See also § 13.12, p. 974. It is objective of Chapter X to encourage the participation of all interests and this should be kept in mind in attempting to draw a line between services rendered in connection with the reorganization broadly and those strictly in the interest of a particular claimant.

■ We hold, however, that the District Court did not abuse its discretion in denying the application of appellants for fees and costs when we consider the fact of the extra payment of $26,000 and the representations of appellants to the court at the time. Mr. Calhoun had in mind claiming a fee for services rendered in the reorganization. He was the leading counsel for his group. He had corresponded with counsel for the trustee relative to such a fee. He had claimed a fee in two pleadings which were before the court at the time. He thus was aware of his right to claim a fee for himself and his co-counsel, and had full opportunity to assert or reserve such a claim when the matter of the settlement was before the court. He did neither. The District Court did not err in holding them to the position Mr. Calhoun took at that time, especially in light of the fact of the attorneys' fees which they received as a part of the disputed $26,000 payment.

Affirmed.

1. 11 U.S.C.A. § 643:
"The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto."