**In re STANDARD FURNITURE COMPANY, Debtor.**

**Bankruptcy No. 79–03109–M.**

United States Bankruptcy Court,
S. D. California.

April 8, 1980.

**528**

Julius J. Pearl, San Diego, Cal., for himself as Trustee.

Richard F. Luther, Gray, Cary, Ames & Frye, San Diego, Cal., for Lee M. Norwood.

## MEMORANDUM OPINION REGARDING PAYMENT OF ADMINISTRATIVE EXPENSES

### I

JAMES W. MEYERS, Bankruptcy Judge.

On January 25, 1980, Mr. Lee M. Norwood ("Norwood"), lessor to Standard Furniture Company ("Debtor"), filed his application for payment of administrative expenses pursuant to Section 503 of the United States Bankruptcy Code ("Code"). Norwood requests that he be immediately paid the sum of $9,898.33 in past due rent. He bases this claim on the terms of a lease under which the trustee herein, Mr. Julius J. Pearl, occupied the premises formerly used by the Debtor.

On February 11, 1980, the trustee filed his response to Norwood's claim for administrative expenses. It is the trustee's contention that Norwood is only entitled to administrative expenses in the amount of $2,398.33.

This matter came on for hearing before this Court on February 15, 1980. Having considered the written and oral arguments presented by both parties, the Court has decided that the trustee's position is the correct one. This opinion is filed to explain that decision.

### II

### FACTS

On April 8, 1979, Norwood entered into a ten year lease of the premises in question with Mr. and Mrs. James Ogilvie. The rent agreed upon was $5,000.00 per month plus 10% interest per annum on all amounts not paid within five days of the date due. Mr. and Mrs. Ogilvie additionally deposited with Norwood, the sum of $5,000.00 as security for full performance of the terms of the lease. The lease was subsequently assigned by Mr. and Mrs. Ogilvie to the Debtor.

On November 14, 1979, the Debtor filed its Chapter 7 petition. The trustee then entered into possession of the leased prem-

ises. In early December of 1979, the trustee orally informed Norwood's attorney that the Debtor intended to vacate the premises on or before January 1, 1980. Thereafter, an auction was held, and the Debtor's inventory and equipment were sold.

On December 28, 1979, an agent of the trustee, Mr. Maxwell Kaufman, delivered the Debtor's keys to the premises to Norwood's real estate agent. Kaufman informed the agent that the Debtor would no longer conduct any business in the leased building and that all utility services had been discontinued.

On December 31, 1979, Norwood filed a priority claim for rent due covering the period from November 14, 1979, to December 27, 1979 in the amount of $7,166.67. This claim was subsequently amended to allege that the trustee was liable to Norwood for rent accrued during the period of November 14, 1979, to January 12, 1980. The amended claim is in the amount of $9,898.33.

Early in January of 1980, Norwood's attorney informally requested the trustee to make a motion under Section 365 of the Code to either assume or reject the Debtor's lease. The trustee declined to do so. He based his refusal on his prior oral notification of the Debtor's intent to vacate the premises as of January 1, 1980.

### III

### DISCUSSION

#### A. *NORWOOD'S CLAIM FOR ADMINISTRATIVE EXPENSES.*

Norwood contends that under Section 503 of the Code he is entitled to priority administrative expenses for rent which accrued during the period of November 14, 1979, to January 12, 1980. He grounds his claim on the following argument: Section 365, he suggests, imposes a mandatory duty on the trustee to accept or reject the Debtor's lease. Norwood acknowledges, though, that in a Chapter 7 liquidation the debtor's lease is *automatically* rejected sixty days from the date the petition is filed. 11

U.S.C. § 365(d)(1). Nonetheless, Norwood argues that he was left in doubt regarding the status of the lease because of the trustee's failure to formally reject it. Norwood additionally claims that the trustee had effective use and control of the premises during the sixty day period because of his failure to formally reject the lease. Based on these premises, Norwood concludes that he is entitled to rent for the entire sixty day period under Section 365(d)(1).

The trustee, on the other hand, is willing to pay Norwood rent only for the period he actually occupied the premises i. e., November 14, 1979, to December 28, 1979, and claims entitlement to an offset of $5,000.00. He further points out that Norwood had timely and unequivocal notice of the Debtor's intent to vacate the building as of January 1, 1980, and that a formal motion under Section 365 was unnecessary because of that notice.

With respect to Norwood's contentions, Section 503 provides in pertinent part that:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . . .

The trustee does not challenge the established proposition that rent incurred by a trustee or debtor during their occupancy of leased premises is allowable as an administrative expense. *See e. g., In re Chase Commissary Corporation,* 11 F.Supp. 288, 289 (S.N.Y.1935) (reorganization case). Nor does he question that the Code adopts this position by allowing as an expense of administration the "costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). *See* 3 *Collier on Bankruptcy,* ¶ 503.04 (15th ed.). The dispute here centers around the amount of the expenses to be allowed.

■ Where an unexpired lease is eventually adopted by the trustee, the estate becomes liable to the lessor for rent reserved in the lease accruing from the date of filing the petition until the date of assumption. *See In re Chase Commissary Corporation, supra*, 11 F.Supp. at 289. *See also 2 Collier on Bankruptcy*, ¶ 365.03[2] at p. 365–25 (15th ed.). It is well settled, however, that where a lease is ultimately rejected, or for the period pending either rejection or assumption, the amount of allowable expense for administrative rent is measured by the period of actual occupation and use of the premises. *See Philadelphia Co. v. Dipple*, 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1940) (reorganization case); *Matter of Chase Commissary Corporation, supra*, 11 F.Supp. at 289; *In re CRS Architectural Metals Corp.*, 1 B.R. 729, 732 (E.N.Y.1979). This amount is ordinarily, but not necessarily, determined by an allocation of the rent reserved in the lease on a pro-rata basis. *See In re Frederick's Meats, Inc.*, 483 F.2d 951, 952 (9th Cir. 1973); *In re Buttonwood Securities, Inc.*, 349 F.Supp. 273, 278 (S.Cal. 1972) (Neilson, J.). *See also 2 Collier on Bankruptcy*, ¶ 365.03[2] at p. 365–24 (15th ed.). This proposition is reaffirmed in Section 503 by use of terms "actual" and "necessary" in reference to those expenses allowed as a cost of preserving the estate. 11 U.S.C. § 503(b)(1)(A). *See generally 3 Collier on Bankruptcy*, ¶ 503.04[1][a] at p. 503–15 (15th ed.). Here, the trustee is satisfied that the contractual rental is a reasonable figure from which the value of his use and occupancy can be calculated.

■ Norwood, though, contends that he is entitled to rent covering the sixty day period preceding the automatic rejection of the Debtor's lease under Section 365(d)(1). This section provides:

In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

Norwood's contention is without merit. To begin with, Section 365 is not mandatory in character as Norwood suggests. It provides only that the trustee *may* assume or reject an unexpired lease. *See* 11 U.S.C. § 365(a). It does not place upon the trustee a mandatory duty to do so. He is merely given the discretionary power to assume or reject, subject to court approval.

A lessor in a case brought under Chapters 9, 11 or 13 of the Code may request the court to order the trustee to assume or reject a lease within a specified time period. As Section 365(d)(2) provides:

In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2). The decision to assume or reject a lease in a Chapter 7 setting, however, is solely the trustee's for a sixty day period. *See* 11 U.S.C. § 365(d)(1).

■ Secondly, Norwood's claim that he was left in "doubt" regarding his status vis-a-vis the lease is not well taken. By implication, Section 365(d)(1) operates to remove doubts entertained by a lessor concerning the status of his lease with the estate. This is so because in a non-Chapter 7 case a lessor may resolve his doubts about his lease by requesting the court to order the trustee to assume or reject it within a certain period of time. *See* 11 U.S.C. § 365(d)(2). That Congress did not include a similar provision for use by Chapter 7 lessors indicates that the automatic rejection provision of Section 365(d)(1) was itself intended to resolve such uncertainty. *See generally* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 348 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963.

This factor, coupled with the timely and unequivocal notice given Norwood by the trustee regarding the Debtor's intent to vacate the premises, refutes Norwood's claim that he was confused about the even-

tual disposition of the leasehold. The trustee, moreover, cannot be said to have exercised "effective control" over the premises for a period of sixty days, as he had given the Debtor's keys to Norwood's agent late in December of 1979.

### B. *DISPOSITION OF THE SECURITY DEPOSIT.*

The parties agree that the Debtor was current in its rent through November 15, 1979, and that the trustee relinquished actual possession of the premises on or about December 27, 1979. The latter fact is borne out by Norwood's original proof of claim filed on December 31, 1979.

The trustee seeks to offset the rent which accrued during this period with the $5,000.00 security deposit previously given Norwood by the Debtor's assignors. The trustee is thus willing to pay Norwood $2,333.33 for occupancy during the period of December 15, 1979, to December 28, 1979, plus $65.00 for expenses incurred by Norwood in cleaning the premises.

Norwood claims that Section 553 of the Code governs in this instance and that there is no right to a "set-off" here because there are no mutual debts between the parties to the lease. Norwood further alleges that the Debtor breached certain covenants in the lease. Specifically, he claims that the Debtor failed to maintain the premises in good condition. If such an allegation is proven, the lease allows Norwood to retain the deposit insofar as it is needed to restore the premises to good condition. Alternatively, the lease allows Norwood to treat the deposit as prepaid rent, but Norwood has not made such an election.

Norwood's arguments are unsound. First of all, there are mutual obligations between the parties. The trustee, by his use and occupation of the premises, owes Norwood for the reasonable value thereof, and Norwood, as is provided in the lease, is a debtor of the trustee with respect to the security deposit. Secondly, Section 553 does not affect the trustee's claim of offset anyway, as that section by its own terms, is applicable only to the right of set-off by a *creditor*. *See* 11 U.S.C. § 553(a); 4 *Collier on Bankruptcy*, ¶ 553.12 at p. 553–54 (15th ed.). Here, the trustee is not a "creditor" as defined in Section 101(9) of the Code, as his claim of offset is directed against Norwood and not the Debtor. *See* 11 U.S.C. § 101(9).

The trustee's right of offset is a defense of the Debtor which the trustee may assert under Section 541(e) of the Code. 11 U.S.C. § 541(e). This section provides in part that: "The estate shall have the benefit of any defense available to the debtor as against an entity other than the estate . . . ." 11 U.S.C. § 541(e). *See generally Carstens v. McClean,* 7 F.2d 322, 323 (9th Cir. 1925); 4 *Collier on Bankruptcy,* ¶ 541.25 (15th ed.).

Thirdly, Norwood's assertion that the Debtor breached the lease by failing to maintain the premises is unsupported by any evidence whatsoever. Therefore, he cannot prevail on this claim as he has not proven any default on the part of the Debtor. Under California law, a landlord is entitled to retain a deposit given to secure performance of a lease only to the extent that it compensates for actual and proven damage. *See generally* 1 B. Witkin, *Summary of California Law,* Contracts § 419 (1973). *See also* Cal.Civ.Code § 1950.7(c) (West). Norwood has not shown how he was damaged and he cannot therefore retain the benefit of the deposit.

### C. *NORWOOD'S CLAIM FOR INTEREST ON THE RENT DUE AND FOR CLEANING EXPENSES.*

Part of Norwood's claim for administrative expenses involves interest at the rate of 10% per annum on all past due rent. As authority for his position, Norwood relies solely on a provision in the lease which reads:

> In the event the minimum monthly rental or any other sum due Landlord from Tenant under the provisions of this lease is not received by Landlord, within five (5) days of when due, then, Tenant shall pay, as additional rent, interest at the rate of ten percent (10%) per annum

on each such obligation from the day it is due until it is received by Landlord. The use of such a provision is proper under California law. *See Canal-Randolph Anaheim, Inc. v. Wilkoski*, 78 Cal.App.3d 477, 492–3, 143 Cal.Rptr. 789 (1978). *See generally* Cal.Civ.Code §§ 3287(a), 3302 (West). In a bankruptcy context, however, the rule is different, for it is well settled that interest on claims is not allowable against an insolvent estate. *See In re Waller*, 3 B.C.D. 78, 79 (S.Cal.1977). Moreover, Norwood's right to compensation in this case is based on the trustee's actual use and occupancy of the premises and not the lease itself. *See In re Frederick's Meats, Inc.*, 483 F.2d 951, 952 (9th Cir. 1973). Although the rental amount reserved in the lease may indicate the amount of administrative expense to be allowed a lessor, it need not in every case. *See S & W Holding Company v. Kuriansky*, 317 F.2d 666, 667 (2d Cir. 1966). In any event, the interest sought to be recovered here seems more akin to a penalty for late payment than "additional rent" as it is denominated in the lease.

■ Norwood also demands as an administrative expense the sum of $65.00 which he has expended to clean the premises. The trustee has indicated a willingness to pay this amount and does not oppose the claim. This Court, moreover, has concluded that the charge is a necessary cost of preserving the estate as it is closely intertwined with the Debtor's liability as a tenant of Norwood. The fact that Norwood incurred the expense and not the trustee is not viewed as controlling here. *See generally* 3 *Collier on Bankruptcy*, ¶ 503.04 at p. 503–16 (15th ed.).

D. *NORWOOD'S RIGHT TO IMMEDIATE PAYMENT.*

Finally, Norwood requests that the Court immediately pay the administrative expenses he claims are due. The Code, however, merely authorizes a claimant to re-

quest payment. *See* 11 U.S.C. § 503(a). It does not address the question of *when* a claim for administrative expense is to be paid, as that subject will eventually be covered by the rules of procedure to be promulgated under the Code. *See* 3 *Collier on Bankruptcy*, ¶ 503.02, at p. 503–5 (15th ed.).*

There being no specific direction in the Code, or the Rules, then this Court must refer to judicial precedents under the Act. There it was well established that the Court has wide discretion in allowing the payment of administrative expenses, such as attorney's fees, on an interim basis. *See Lutheran Hospitals And Homes Society of Amer. v. Duecy*, 422 F.2d 200, 205 (9th Cir. 1970); *Matter of Pac. Far East Line, Inc.*, 458 F.Supp. 771 (N.Cal.1978); *In re Great American Management and Investment*, 5 B.C.D. 87 (N.Ga.1979). These decisions are also applicable to claims for payment of administrative rent as the Act did not allow the Court to establish a priority among administrative expense claimants. *See e. g., Matter of Texlon Corporation*, 3 B.C.D. 1013 (S.N.Y.1977) (Chapter XI).

■ There being no indication that the Code abrogates this discretion regarding interim payments in liquidation cases, then this Court holds that this broad discretion continues under the Code. *See generally, In re Grimes*, 96 F. 529, 536 (W.N.Car.1899); *In re Chase Commissary Corporation, supra*, 11 F.Supp. at 289–90; *In re Furniture-In-The-Raw, Inc.*, 462 F.Supp. 958 (S.N.Y. 1979). However, it must be recognized that an interim allowance should not be authorized for any Section 507(a)(1) claim in an amount which exceeds the anticipated prorata payout to be received during the entire administration of the case. *See Lutheran Hospitals and Homes Society of Amer. v. Duecy, supra*, 422 F.2d at 205–6.

■ Here it appears that all costs of administration will be paid in full and, therefore, it would be appropriate to ap-

---

* Bankruptcy Rule 308 is not helpful as that rule deals with the payments of "dividends", which by definition is concerned only with payments to general creditors and not the payment of administrative expenses. *See City of Richmond v. Byrd*, 249 U.S. 174, 177, 39 S.Ct. 186, 187, 63 L.Ed. 543 (1918); Bankruptcy Act § 64(a)(1).

prove payment of Norwood's rental claim in full at this time.

## IV

### CONCLUSION

In light of the foregoing analysis the Court has concluded that Norwood is entitled to be immediately paid as an administrative expense, the sum of $2,398.33. This represents the reasonable value of trustee's use and occupancy of the premises from December 15, 1979, through December 28, 1979, based upon the rent reserved in the lease plus cleaning expenses of $65.00. The trustee is entitled to offset the security deposit of $5,000.00 against that rent which accrued from November 15, 1979, to December 15, 1979, and Norwood may not recover interest on his claim. The trustee shall prepare an appropriate order within fourteen (14) days.