In re WARRIOR DRILLING & ENGI-
NEERING CO., INC., Debtor.

HOWELL PETROLEUM
CORPORATION,
Appellant,

v.

BERKOWITZ, LEFKOVITS & PATRICK,
Silberman, Silberman & Loeb,
attorneys, Appellees.

Civ. A. No. CV81–PT–0699–S.
Bankruptcy No. 80–0198.

United States District Court,
N. D. Alabama, S. D.

Sept. 24, 1981.

**686**

Robert B. Rubin, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., for appellant.

Abe Berkowitz, Berkowitz, Lefkovits & Patrick, Wilbur Silberman, Silberman, Silberman & Loeb, Birmingham, Ala., for appellees.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on the appeal of Howell Petroleum Corporation (Appellant) from an order of the United States Bankruptcy Court 9 B.R. 841 for the Northern District of Alabama dated March 17, 1981.

The sole issue before the court is the allowance of compensation for legal services and reimbursement of expenses to the law firms of Berkowitz, Lefkovits and Patrick, and Silberman, Silberman and Loeb (Appellees) for their representation of Warrior Drilling & Engineering Co., Inc. (Warrior), a Chapter 11 debtor-in-possession.

## CASE HISTORY

Warrior Drilling & Engineering Co., Inc. (Warrior) is a corporation engaged in the business of oil and gas exploration, development, production and transportation. By early 1980 Warrior was in serious financial difficulty. Its debts totalled approximately $55,000,000.00, including an approximate $32,000,000.00 indebtedness to the First National Bank of Birmingham, which was secured by virtually all the assets of Warrior. There were other secured debts, including second positions, of over $3,100,000.00, royalty interest owners, unsecured trade creditors, limited partners, working interest owners, joint working interest owners, "take or pay" investors, customers and, of course, stockholders; all of which had to be dealt with.

On April 14, 1980, upon the request of Warrior's regular counsel, Warrior filed a petition (which had been prepared by Warrior's corporate counsel) under the provisions of Chapter 11 of the Bankruptcy Code. This petition was signed and filed by Berkowitz, Lefkovits & Patrick, counsel for debtor, by Abe Berkowitz.

On April 15, 1980, Attorney Abe Berkowitz and an associate in his law firm met with Warrior's Board of Directors in Tuscaloosa. At that meeting a discussion was had concerning the terms of Mr. Berkowitz's employment. In pertinent part, those minutes read as follows:

The Board was then introduced to Mr. Abe Berkowitz and his associate, Ms. Susan Salonimer, with the firm of Berkowitz, Lefkovits & Patrick, Attorneys of Birmingham. *It was reported that the corporation, pursuant to the authority granted in the motion regarding the filing of the Chapter 11 petition, had retained Mr. Berkowitz and his firm to represent the corporation regarding the Chapter 11 proceeding. Mr. Berkowitz outlined the terms of his employment, being the* (sic) *he had been retained to assist with the Chapter 11 proceeding and that his services would be billed to the*

corporation at the rate of $125.00 per hour and Ms. Salonimer's time would be billed at $40.00 per hour. It was also disclosed to the Board that Ms. Salonimer was married to Mr. Tim Cain, an Assistant Trust Officer of the First National Bank of Birmingham. Mr. Berkowitz stated that the Board should be aware of this potential conflict of interest and that if anyone had objections to Ms. Salonimer working on the case, another associate could be utilized. Mr. William Tucker stated that he had no objections to Ms. Salonimer's services being used and no other objection was voiced.

\*     \*     \*     \*     \*     \*

Mr. Berkowitz then reported on the Chapter 11 proceeding to date and presented a general explanation of the effect of a Chapter 11 petition, including the fact that it operated as a "stay" proceedings against the corporation to collect secured and unsecured debt and that normally, the company would continue as a "debtor in possession" with the powers of a bankruptcy trustee for a period of 120 days from the filing of the petition. This would mean that the company could continue to operate its business in the ordinary course with two major exceptions, the first being that at any time before the 120 day period a "party in interest" can seek to have a trustee appointed and second, that the ordinary course of business in this situation would exclude any long-term committments (sic) and major capital expenditures.

Mr. Berkowitz also indicated that in his representation at Warrior regarding the Chapter 11 *he would from time to time employ the services of Mr. Wilbur Silberman, an attorney who* specialized in bankruptcy practice. *Mr. Silberman's time would be billed at $100.00 per hour.* Mr. Berkowitz requested and was furnished with a retainer of $15,000.00. Mr. Berkowitz *indicated that no accurate estimate of the total cost of his services* could be made at this time. Mr. Berkowitz further detailed the effect of the Chapter 11 proceeding of the day-to-day operation of the company. (Emphasis added.)

On May 2, 1980, Warrior filed its Application as Debtor in Possession, to employ counsel. The petition was signed by the President of Warrior and requests the Bankruptcy Court to authorize the appointment and employment of the law firms of Berkowitz, Lefkovits & Patrick and Silberman, Silberman & Loeb under a "general retainer." The application states that said law firms had been selected "[f]or the reason that their members and associates are very experienced in matters of this type and well qualified to represent your Application (sic) in this proceeding." The application makes no reference to any prior discussion of attorneys' fees or terms and conditions of employment.

Contemporaneously with the filing of the application to employ counsel, Abe Berkowitz filed a disclosure statement under § 329 of the Bankruptcy Code. This disclosure statement refers to the $15,000.00 retainer, but not to any of the terms of employment (referred to in the April minutes of the Warrior Board meeting).

On May 2, 1980 the Bankruptcy Court entered an order appointing Berkowitz, Lefkovits & Patrick and Silberman, Silberman & Loeb *under a general retainer* to represent Warrior as debtor in possession. No reference was made to any "reasonable terms and conditions of employment" as mentioned in § 328 of the Bankruptcy Code.

On May 29, 1980 Appellees filed an application for $87,931.47 interim allowance of compensation. Accompanying this application was a certificate pursuant to Bankruptcy Rule 219. This certificate states that, "[n]o payments have heretofore been made or promised to them [appellees] except as hereinabove disclosed . . . ." The application refers to the $15,000.00 retainer, but not to any other fee arrangement or discussions. On July 1, 1980, the Bankruptcy Court ordered:

That the Debtor-In-Possession pay to Berkowitz, Lefkovits & Patrick, attorneys, and Silberman, Silberman & Loeb, attorneys, jointly, the sum of $35,000.00

[$50,000.00 less $15,000.00 previously paid] as *partial allowance* of compensation to be awarded and granted against the final allowance made in this case and the sum of $3,000.00 expenses allowance. (Emphasis added.)

On December 16, 1980 Appellees filed an application for compensation totalling $448,657.95, less $50,000.00 previously paid. This application was again accompanied by a certificate pursuant to Rule 219. Neither the application nor the certificate makes reference to the discussion, as to attorneys' fees, at the April 15 Board Meeting.

Appellant objected to the allowance of the compensation requested. The Bankruptcy Court heard the matter from time to time and on January 26, 1981 the Bankruptcy Court determined that "[i]t is apparent that said attorneys have earned and are entitled to compensation in at least the sum of $200,000.00 ...." The Bankruptcy Court allowed an additional payment, toward fees, of $100,000.00 plus expenses. The matter was continued for further hearing on March 5, 1981. On March 17, 1981, the Bankruptcy Court entered a memorandum opinion and an order awarding total attorneys' fees of $415,000.00 (including the $150,000.00 previously paid) plus $12,485.07 in expenses (including $11,603.95 previously paid) The awarded fee included a premium of over $200,000.00 in excess of the amount which would have been awarded at the rates discussed in the April 15, 1980 Board meeting. It is from this order that appeal has been taken. No argument has been offered by Appellant opposing the expenses. Appellant zealously opposes the award of the attorneys' fees.

## CONTENTIONS OF PARTIES

Appellant presents nine arguments for the court's consideration and decision. In substance they are:

1. Appellees should be denied all fees and expenses for failure to disclose in their affidavit a fee arrangement with Warrior or Berkowitz's agreement to share fees with Silberman. This will be referred to as the "Failure to Disclose" issue.

2. The Bankruptcy Court had no authority to cancel the fee agreement between Warrior and Appellees in that such authority is limited under § 329 to instances of excessive fees. This will be referred to as the "§ 329 Cancellation" issue.

3. The interim fees paid to Appellees constituted full and final compensation for services rendered. This will be referred to as the "Interim Fees" issue.

4. The Bankruptcy Court award is erroneous, excessive and an abuse of discretion under § 330. This will be referred to as the "§ 330" issue.

5. The Bankruptcy Court abused its discretion in applying *Johnson v. Georgia Highway Express* [488 F.2d 714 (5th Cir. 1974)] criteria. This will be referred to as the "Johnson" issue.

6. The court was not authorized to cancel the "fee agreement" under § 328. This will be referred to as the "§ 328 Cancellation" issue.

7. The order of the Bankruptcy Court is unconstitutional. This will be referred to as the "Constitutional" issue.

8. The award of the Bankruptcy Court is excessive, unreasonable, and an abuse of discretion. This will be referred to as the "Excessive Award" issue.

9. The Bankruptcy Court erred in various evidential rulings. This will be referred to as the "Evidence" issue.

In order to bring focus on these various issues, the court will in a fragmented fashion summarize the positions taken with regard thereto by Appellant and Appellees.

1. *Failure to Disclose* Issue.

a. Appellant:

Appellee Berkowitz's disclosure statement filed in connection with his appointment did not comply with Rule 219 or §§ 329 and 504 because it did not state the fee agreement between Appellee Berkowitz and Warrior, nor the agreement with Silberman for the sharing of fees. The provisions are mandatory and a failure to comply

requires that all compensation be denied (citing several cases).

b. Appellee:

The issue was not raised in Bankruptcy Court and no related finding was made. There was no agreement in effect to be disclosed because any such agreement was modified by the Bankruptcy Court's order entered on May 2, 1980 to a "general retainer" basis. Failure to reveal amount paid might constitute a violation of § 329, but failure to reveal agreement to pay compensation does not. [Citing *Matter of Mullendore*, 527 F.2d 1031 (10th Cir. 1975)]. The two firms were authorized jointly, to represent the debtor in possession and both took an active role. The purpose of § 329 is to preclude evasion of creditor protection provisions; not here involved. Additionally, it is doubtful that § 329 encompasses an agreement by the debtor in possession that is not approved pursuant to § 328(a).

2. *Section 329 Cancellation* Issue.

a. Appellant:

Section 329(b) empowers the court to cancel a fee agreement only if the compensation provided for *exceeds* the reasonable value of services; not if the compensation agreed to is *less* than the value of the services. Bankruptcy Court erred in cancelling the fee agreement under § 330 because § 329 precludes cancellation under § 330 or any other section. There are no cases under § 329 or its predecessor where an agreement was cancelled because it was too low. The Bankruptcy Court affirmed the retention of Appellant under the "general retainer" contemplated by their unrevealed agreement with Warrior. The Bankruptcy Court recognized the existence of the agreement at the fee hearing. The agreement did not provide for a premium for any reason. Section 328, relied on by the Bankruptcy Court to cancel or modify the agreement does not apply to a debtor's attorney. Fee to debtor's attorney is governed by § 329 and where applicable § 330. In any event, § 328 is a *limitation* on compensation. Furthermore, difficulty of case was anticipated and provided for by association of Silberman.

b. Appellees:

The Bankruptcy Court specifically authorized retention on a "general retainer" basis. Warrior did not seek approval of any agreement to pay Appellees hourly rates. Section 328 provides that trustee [or debtor-in-possession] may employ attorney "on retainer, on an hourly basis, or on a contingent fee basis." Warrior's application selected the first of these three alternatives.[1] Warrior did not commit itself to pay hourly rates and Appellees did not agree that hourly charges would constitute maximum compensation. Nobody, including Warrior, took exception to court approved fee basis on May 2, 1980 or testified that there was a prior agreement. Any such agreement would not be binding on either party until approved by the Bankruptcy Court and, even if approved, could be modified for unanticipatable developments under § 328(a). Parties could not have anticipated complexity or good result. Section 328 applies to attorneys for debtors-in-possession because debtor in possession performs functions and duties of trustee, [§ 1107(a)]; trustees may hire counsel pursuant to § 327, [§ 1107(b)]. Section 327 makes it clear that trustee [debtor in possession] may employ one or more attorneys. Appellees distinguish § 329 from § 327 as allowing the debtor legal representation *without court approval.* "Debtor in possession" is synonymous with "trustee" under § 328. Section 329 is applicable only where a trustee has been appointed and a debtor (not in possession) is represented by counsel. Since § 329 is not prohibitive, court's broad authority under § 328 would apply in any event. Section 328 allows the court to increase as well as decrease compensation to counsel for debtor-in-possession as indicated by legislative history. Section 328 refers to "different" compensation. Section 329 re-

1. The court does not agree that the Bankruptcy Court's use of the term "general retainer" was equivalent to the term "retainer" in § 328. See later discussion.

fers to "excess." Court's finding of "unanticipatable" and "improvidence" is supported. There is no evidence that Howell relied on any fee agreement.

3. *Interim Fees* Issue.

a. Appellant:

Interim fees should be well below any possible final allowance. Allowances on July 1, 1980 and on January 26, 1981 were not "well below" final possible allowance. Cannot be "interim" because too close to total; therefore must be viewed as full and final. Cites *Lutheran Hospitals & Homes Society v. Duecy*, 422 F.2d 200 (9th Cir. 1970). Appellees did not reserve right to petition for additional compensation and therefore not entitled to compensation for further services. Howell relied on Appellees' fee agreement with Warrior.

b. Appellees:

No evidence was presented that Howell relied on terms of any fee agreement. One Hundred Fifty Thousand Dollars interim awards were "well below" final award of $415,000.00. Full value of services was not determined until conclusion of the case. Interim allowances are subject to the court's re-examination. Requests for interim compensation were not granted in full amounts requested. Appellees distinguish *Lutheran* on the basis that the attorney in *Lutheran* had represented to a prospective purchaser what his future compensation would be and that purchaser had relied upon the representation. Further, that there was not here, as there was in *Lutheran*, an indication that either the Applicants or the Bankruptcy Court considered the interim awards to be full or final.

4. *Section 330* Issue.

a. Appellant:

The Bankruptcy Court had no authority to apply § 330 criteria because § 329 controlled and the Bankruptcy Court could not cancel the prior agreement. Alternatively, under § 330 fee award was excessive. There is a marked, unjustified discrepancy between hourly rate for the interim award and final award [citing *In Re Imperial "400" National, Inc.*, 432 F.2d 232 (3rd Cir. 1970)]. Time element does not justify award, particularly in view of prior agreement.

No premium is justified. There was a prior agreement and work done was normal and foreseeable for Chapter 11 cases. Purpose in associating Silberman was to get additional expertise. This is paid for by time and no premium is justified. Further, should not be entitled to premium for nonlegal services in travel time and in attending board meetings. Further, multiple attorneys were involved in travel and in attending the meetings. What brought the good result was appearance of Howell. Appellees had nothing to do with this. Fees charged by Appellees was what they normally charge in non-bankruptcy matters. Thus adequate.

b. Appellees:

The Bankruptcy Court has broad discretion and can be reversed only for clearly erroneous fact or failure to apply proper legal standards. Section 330 eliminates "principle of economy" rule requiring awards to be at lower end of the spectrum of reasonableness. The Bankruptcy Court found high skill, preclusion from other employment, contingent nature of compensation, time constraints, good result, large amount involved, comparison to awards in other cases. The Bankruptcy Court emphasized results and amount involved and efforts at crucial points.

5. *Johnson* Issue.

a. Appellants:

*Johnson* criteria apply along with further factor of avoiding duplicative fees for non-legal services. The Bankruptcy Court erroneously considered non-record time (citing cases). The Bankruptcy Court erred in doubling time spent on fee application (citing *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088 (5th Cir. 1980). The Bankruptcy Court did not state what alleged novel and diffi-

cult issues were. High degree of skill and efficiency was compensated by paying Silberman in addition to Berkowitz. To double both is a windfall. Issues were not novel. Fee agreement fully contemplated problems and Silberman's required expertise. No evidence that Appellees precluded from taking other work.

The Bankruptcy Court erred in using agreed upon fee as base and then enhancing. The base should be fees charged in the community for similar bankruptcy work, not Appellees' fees in other work. The Bankruptcy Court erred in finding that fee arrangement was contingent. (Citing *Matter of U. S. Golf*, 639 F.2d 1197 (5th Cir. 1981). Appellees were assured of some fee. Under *Johnson* litigant cannot be awarded fee greater than amount contracted. Although amount involved was large and result good, Appellees' efforts did not cause.

In increasing award for experience and ability the Bankruptcy Court failed to consider that Silberman's association had already increased fee. Desirability factor weighs in Howell's favor. The Bankruptcy Court erred in analogizing to anti-trust and securities litigation. Again skill factor was compensated by association of and separate pay to Silberman. The Bankruptcy Court doubled *both* fees. The Bankruptcy Court ignored duplicative fees for non-legal services. Appellant challenges doubling of fees attributable to duplication. Fee should have been reduced because of duplicative travel time, board meetings, etc.

b. Appellees:

Clearly erroneous standard applies. Substantial evidence supports Bankruptcy Court's findings and conclusions. No indication that Bankruptcy Court compensated for unrecorded time or slippage. Only mentioned in passing.

The Bankruptcy Court held that Appellees were entitled to only customary hourly charges for efforts connected with fee application.

With regard to duplicative services, the Bankruptcy Court was in position to consider type attendance at hearings and whether needed. Attendance at Board meetings avoided later conferences between attorneys.

Novel questions involved questions arising under the new Code. The Bankruptcy Court's findings of novelty substantially supported.

The Bankruptcy Court found that degree of skill required was not fully reflected in hourly rates charged by Applicants for routine services performed for general clients in other matters. There was evidence of preclusion from other matters.

Fees were contingent because Appellees could have received less if available funds were less.

Appellees held the business together in order for it to be a going concern for Appellant to acquire. The Bankruptcy Court did not compensate Appellees as "finders," but for their role in holding business together and negotiating with Appellant.

There have not been any cases under the new Code (after abolishment of Pre-Code economy considerations) for comparison in substantial bankruptcy cases. Section 330 mandated that Bankruptcy Court consider cost of comparable services other than under this title.

Non-legal services duplication has primary reference to attorneys performing services which could be performed by trustees.

6. *Section 328 Cancellation* Issue.

a. Appellant:

Section 328 applies not to debtor's attorneys, but to compensation of the bankruptcy trustee. There was none in this case. Section 328 thus not applicable.

In any event § 328 provides only for limitation of fees; not escalation. Further, events were not unanticipatable. Anticipation evidenced by association of Silberman, $15,000.00 retainer and premium hourly rates. Appellees' experience in bankruptcy matters would have put them on notice of what to expect.

b.  Appellees:

See argument under 2 (*Section 329 Cancellation* Issue) above.

7.  *Constitutional* Issue.

a.  Appellant:

Cancellation of fee agreement because Bankruptcy Court thinks too low is violative of due process. Warrior had an agreement for fees. In cancelling the agreement, the Bankruptcy Court deprived Howell—Warrior of property rights without due process of law.

b.  Appellees:

Apparently Appellant is arguing that § 328(a) is unconstitutional. If so, all provisions of the Code which subject contracts of debtor to scrutiny would be unconstitutional. Further, there was no contract.

8.  *Excessive Award* Issue.

a.  Appellant:

Appellant generally repeats arguments made elsewhere and charges that Bankruptcy Court's award was abuse of discretion.

b.  Appellees:

Similarly, response is made elsewhere.

9.  *Evidence* Issue.

a.  Appellant:

Court allowed Silberman to testify that Berkowitz could not handle a case. This was excludible hearsay. Court erred in refusing to permit Howell to show expenses in purchasing stock. Would have showed reliance, to its detriment, on fee agreement.

Court erred in allowing testimony as to "slippage time." Court erred in allowing Silberman to testify that services were not

"routine" because it involved province of the court.

b.  Appellees:

Silberman's testimony about declination of employment was not hearsay. Further, was cumulative.

Howell's offer of acquisition cost was an inadmissible summary under Rule 1006, Federal Rules of Evidence. No indication or offer as to how evidence would show reliance.

Rule 704, Federal Rules of Evidence, allows opinions as to ultimate issue.

## CONCLUSIONS OF THE COURT

In order to apply the various statutes, rules and standards to this case, the court must first consider the interrelationship between these various statutes and rules. The Sections of the Code which generally provide for appointment and compensation of attorneys in bankruptcy cases are 11 U.S.C. §§ 327–331.

■ This court is satisfied that the clear meaning of 11 U.S.C. § 1107 can only be that, except for the provision in § 330 providing for compensation to *trustees,* all provisions of §§ 327–331 are applicable to *debtors-in-possession.*

Construing §§ 327–331, *pari materia,* the court concludes the following intents and purposes as they relate to the appointment and compensation of attorneys; the court having first concluded that under § 1107(a) debtors-in-possession and trustees, have the same rights and powers.[2]

■ Section 327(a) provides for the employment, *with court approval,* of attorneys for debtors-in-possession, without reference to any terms and conditions of employment.[3] The compensation of an attorney

---

**2.** In effect "debtor-in-possession" can be substituted for "trustee" in §§ 327–331 except for § 330.

**3.** Section 327(a) reads: "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers,

or other professional persons, that do not hold or present an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

appointed under § 327(a), assuming the absence of any binding and valid agreement to the contrary between the attorney and the debtor-in-possession,[4] would be solely based on a subsequent determination by the court under § 330.[5]

█ Section 328(a) expands on § 327 by allowing the debtor-in-possession, *with court approval,* to employ professional persons [6] *on any reasonable terms and conditions of employment,* including on retainer, on an hourly basis, or on a contingent fee basis.[7] Thus, § 328(a), unlike § 327(a), contemplates that, at the time of appointment, the terms and conditions of employment, including the fee arrangement, will be established. Section 328(a) then further says that, "*Notwithstanding such terms and conditions,*[8] the court may allow compensation different from the compensation provided under such *terms and conditions* after the conclusion of such employment, if such *terms and conditions* prove to have been improvident in light of developments unanticipatable (sic) at the time of the *fixing of such terms and conditions.*" (Emphasis supplied.) It is apparent to the court that the reference to "general retainer" in the

appointment of counsel referred to the general scope of services to be performed by Appellees. It did not refer to a fee arrangement, but indicated that Appellees' services were not for a special purpose.

The court thus concludes that the last sentence in § 328(a) is not applicable to this case because the Bankruptcy Court did not appoint Appellees under § 328(a) and approve or fix the terms and conditions of employment. Appellees' appointment was under § 327(a).

█ Section 329(a) refers to "Any attorney representing a debtor in a case under this title ...."[9] The term "debtor" is defined in 11 U.S.C. § 101(12) as "[p]erson or municipality concerning which a case under this title has been commenced." This would apply to the attorney of any debtor in connection with a case filed under the provisions of any Chapter of Title 11. Thus, an attorney for the "debtor" as referred to in § 329, may or may not become the attorney for the "debtor in possession" (trustee) under § 327.

Another disclosure provision is found in Rule 219(a) of the Bankruptcy Rules.[10]

---

4. The court does not address at this point whether there could be such a binding and valid agreement.

5. Including interim payments under § 331 as governed by § 330 standards.

6. Including, presumably, attorneys.

7. Section 328(a) reads: "The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions."

8. Being the terms and conditions previously established *by court approval.*

9. Section 329(a) reads: "Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation."

10. Rule 219(a) provides: "*Application for Compensation or Reimbursement.* A person seeking compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, and (2) the amounts requested. *An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised,* whether any compensation he has previously received has been shared and whether an

The following portion of Rule 219(a) would appear to be the most significant to this case: "An application for compensation shall include a statement by the applicant as to what payments have theretofore been made *or promised to him for services* rendered or to be rendered in any capacity whatsoever in connection with the case . . . ." (Emphasis supplied.)

The application for Compensation and Reimbursement of Costs by Counsel for the Debtor filed in the Bankruptcy Court on December 16, 1980 states: "Your applicants *accepted employment by the Debtor on April 14, 1980.* For the reasons hereinafter stated they applied for and were granted formal employment by the Court as counsel for the debtor on May 2, 1980." (Emphasis supplied.) Neither this application nor the amendment thereto filed on February 6, 1980 refers to any arrangement with Warrior concerning attorneys' fees. Interestingly, although no terms and conditions were fixed or approved, by the Bankruptcy Court on appointment of Appellees, the application filed on December 16, 1980 also says: "Your Applicants respectfully submit that the provisions of Section 328(a) of the Bankruptcy Code are due to be taken into consideration with the compensation herein prayed for." Presumably, this was a presagement of anticipated difficulty with the fee discussion reflected in the minutes of Warrior's Board meeting on April 14, 1980.

Contemporaneously with the filing of their application for compensation, Appellees also filed a "Certificate Pursuant to Rule 219" in which it is stated: "[t]hat no payments have heretofore been made *or promised* to Applicants for services rendered or to be rendered in any capacity whatever in connection with the case other than the $50,000.00 previously allowed by the Court and paid to your Applicants as interim compensation." (Emphasis added.)

The court will now consider Appellant's contentions.

■ *Failure to Disclose* Issue. The court finds no merit to Appellant's claim that Appellees should be denied all compensation because the arrangement with Silberman violates § 504 and Rule 219(a). It was fully disclosed to both the debtor and to the court that both law firms would be involved in the litigation. Although the understanding as to the hourly rates of each firm was not initially disclosed to the Bankruptcy Court, the Bankruptcy Court had been advised of this arrangement prior to the award of compensation. The Bankruptcy Court approved the employment of both firms to represent the debtor-in-possession. This court does not find the egregious conduct which was found to be present in cases cited by Appellant. In this regard, there was no serious breach of fiduciary obligation as was found in *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925 (2nd Cir. 1979), *affirming,* 462 F.Supp. 1255 (S.D.N.Y.1978). Other cases cited by Appellant involve the sharing of fees with trustees. The court is of the opinion that a total forfeiture of compensation is a sanction which is addressed to the Bankruptcy Court's discretion. If Appellees violated any statutory or fiduciary duty,[11] it is not of the nature to invoke such a sanction.

Appellant has argued that the Appellees should be denied all compensation for failure to disclose the fee discussions which took place at the April 15, 1980 Board meeting of the debtor. This argument is made both as to § 329 and Rule 219. There is a question as to whether § 329 is applicable. A Rule 219(a) disclosure was obviously re-

---

agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be

required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf." (Emphasis added.)

11. The court certainly finds no deliberate violation.

quired. The real questions are whether Appellees violated its requirements by not revealing the prior fee discussions and whether any such breach mandates total forfeiture of compensation. Again, the court concludes, as it did in connection with the fee sharing issue, that any breach by Appellees was not so serious as to require such a forfeiture.

*Interim Fees* Issue. Appellees and the Bankruptcy Court made it amply clear that the July 1, 1980 and January 26, 1981 awards were interim awards under § 331. Appellant's argument for the application of *Lutheran Hospitals and Homes Society v. Duecy, supra,* is misplaced.

*Evidence* Issue. The court concludes that there is no merit to Appellant's arguments addressed to evidentiary rulings of the Bankruptcy Court.

■ Silberman's testimony that Berkowitz declined to accept a case was admissible at least for the limited purpose of showing that Berkowitz did decline the referral.

The record does not indicate that, in offering a summary of the expenses incurred by Howell, Appellant made the originals available for inspection. *Federal Rules of Evidence 1006.* Furthermore, Appellant made no offer of proof that clearly established the relevance of this proffered evidence.

■ There was no apparent harm in the Bankruptcy Court's allowance of evidence concerning "slippage." The Bankruptcy Court did not indicate that it considered this in awarding the fee. It only mentioned it in passing and as further justification for its conclusion otherwise supported.

■ Silberman's testimony as to the nature of the duties performed by the attorney was admissible. See *Federal Rules of Evidence 704.*

■ *Section 330. Johnson and Excessive Award* Issues. Bankruptcy judges have wide discretion in determining attorneys' fees in proceedings before them. Such determinations will be reversed on appeal only if the bankruptcy judge abused his discretion. Such an abuse occurs only if the bankruptcy judge fails to apply the proper legal standard or to follow the proper procedure in making the determination, or bases an award upon findings of fact that are clearly erroneous. *Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *Matter of U. S. Golf,* 639 F.2d 1197 (5th Cir. 1981).

■ The Bankruptcy Court carefully considered and analyzed the services of Appellees in the light of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), and § 330. The Bankruptcy Court made, *inter alia,* the following findings (paraphrased):

That in terms of assets and liabilities this case involves largest bankruptcy proceeding filed in this district and the first Chapter 11 involving oil and gas production. There was a substantial secured loan in default and other substantial secured and unsecured debts. There were total debts of Fifty-Five Million Dollars. Substantial interest accruals and current obligations had to be paid. Warrior was losing $500,000.00 per month. Warrior had lost key employees. The Appellees have marked experience and ability. The ultimate result was full payment to all secured and unsecured creditors and substantial payments to stockholders well in excess of their original investment. The Appellees successfully resisted several critical actions by secured creditors and others. The Appellees had to deal on a substantially daily basis with creditors' committee, debtor's board of directors, customers of debtors, and Appellees had to respond to numerous crises. Senior partners devoted practically full time. The work was not routine. The Appellees demonstrated innovation, tireless effort and skill. The Appellees resisted appointment of a trustee, resulting in savings. The key to success was retaining debtor's value as a going concern. All of foregoing was accomplished in less than one year to the benefit of all. The Appellees resisted all efforts toward

straight bankruptcy and liquidation. The Appellees successfully negotiated with Howell to the benefit of creditors and stockholders. The Appellees insisted on protective measures in the Plan and Disclosure Statement prepared by Howell. The Appellees successfully dealt with Howell after Howell purchased the interests of large secured creditors and was in position to back out on its offer. The Appellees were under extreme pressure to meet deadlines set by the Bankruptcy Court.

The Bankruptcy Court referred to its forty years of experience in awarding fees in determining that a premium was justified for ability, expertise, and firmness of action under fire.

This court does not find that the Bankruptcy Court's findings of fact are clearly erroneous. In the absence of the fee discussions at the April 15, 1980 Board meeting, the court would not reverse the Bankruptcy Court for failing to apply the proper legal standard or to follow proper procedures in making its determination.

*Section 328 Cancellation and Section 329 Cancellation* Issue. The remaining issues require that the court directly consider the significance of the fee discussions at the April 15, 1980 board meeting.

■ It is apparent that Warrior's Board was concerned about the fees which Appellees would charge for their representation in the Chapter 11 proceedings. It would appear to the court that the next result of the discussions at the April 15 meeting was that Warrior and Appellees contractually established the terms and conditions of Appellees' employment. Although any such agreement would be subject to the approval of the Bankruptcy Court upon application for compensation, the court sees no statutory or policy considerations which would preclude the agreement as establishing maximum compensation. In effect, Appellees contracted not to petition for compensation except at the rates agreed upon.

Appellees have argued and apparently the Bankruptcy Court agreed, that a debtor cannot make an agreement for attorney fees. Section 328(a) clearly indicates that such an agreement can be made, subject to approval of the Bankruptcy Court. In this instance approval was not sought under § 328(a). This court questions whether, in the absence of a prior disclosure to the debtor of the possibility of an increase in the amount of the compensation agreed upon, the Bankruptcy Court could increase fees in a proper § 328(a) case. That question is not before the court. It should be remembered that § 328(a) speaks in terms of employment by trustees. Although § 1107(a) gives debtors-in-possession the same rights and powers, the controlling principles are not necessarily the same.

Appellees have argued that there was no binding contract between Warrior and Appellees. This court concludes that there was a contract establishing maximum compensation to be applied for by Appellees. However, since Appellees have made such an argument, it appears appropriate to discuss the fiduciary responsibilities involved.

■ Having entered into the discussion, Appellees had an obligation to make a full disclosure to the Board. This was particularly true since, as indicated in the minutes, the Board had previously "[p]ursuant to the authority granted *in the motion regarding the Chapter 11 petition, retained* Mr. Berkowitz and his firm to represent the corporation regarding the Chapter 11 proceeding." Mr. Berkowitz's retainer to file the petition placed him in a fiduciary relationship with the debtor with regard to any request to have him appointed as counsel for the debtor-in-possession. Appellees did not disclose to the Board that their quoted hourly rates were subject to adjustment by the Bankruptcy Court for any reason. Mr. Berkowitz's indication that no accurate estimate could be made of the total cost of services presumably referred to an inability to estimate the number of hours required. It cannot be interpreted to disclose a possible award of a premium by the Bankruptcy Court. Any such intended disclosure should have been clearly made. There is no evidence that, prior to filing for compensation,

Appellees ever advised Warrior that the quoted hourly rates were subject to adjustment.

The courts have placed a stringent burden on attorneys with regard to compensation arrangements with clients. It has been held that a contract made during the existence of an attorney-client relationship is presumptively unfair or invalid, and that the burden of proving the fairness or validity of the contract is upon the attorney. A full disclosure of all relevant facts and circumstances is required. The client must fully understand the effects of the contract so as to be able to act freely, and at arm's length. *Scott v. Hardyman*, 218 Ala. 515, 119 So. 224 (1928).

Although such principles are usually applied in instances where the client seeks to avoid a contract, they are generally applicable to this case.

When there is a fee agreement made before complete performance of all services by the attorney, later attempts to increase the compensation are examined even more closely. *Norfleet v. Stewart*, 180 Ark. 161, 20 S.W.2d 868 (1929). The attorney has the burden of proving that he made full disclosure and showing that the client's act was well understood. In this case, Appellees offered no evidence to show that Warrior knew of or acquiesced in the possibility of a premium being awarded by the Bankruptcy Court. In *Baumrin v. Cournoyer*, 448 F.Supp. 225 (D.C.Mass.1978), the court stated:

> While this Court has the inherent equitable power to pass upon the reasonableness of counsel fees charged in connection with any matter before it, it would be improper for the Court to nullify, or to diminish the effectiveness of, a valid contract, voluntarily entered into by the parties and under which [the attorney] established a ceiling subject to a duty of notification.

448 F.Supp. at 228.

Although the application to employ counsel was signed by Warrior's president, it was prepared by Appellees. The application gave no indication to the debtor that a premium over quoted hourly rates was a possibility.

The Bankruptcy Court held that, "The Court would not have permitted any agreement between Debtor and Applicants fixing the amount of attorney fees . . . ." (Memorandum Opinion, Page 691.) Clearly, the Bankruptcy Court had such authority under § 328(a), but the application prepared by Appellees did not request approval of such terms and conditions.

Since the Bankruptcy Court was not asked to approve a fee arrangement under § 328(a), it had no authority to use § 328(a) as a basis for modifying a fee arrangement between the debtor and Appellees. Furthermore, the legislative history to the section states: "This provision is permissive, not mandatory, and should not be used by the court if to do so would violate the code of ethics of the professional involved . . . ."

The court concludes that, having made a representation of a fee arrangement to the debtor, Appellees had a fiduciary obligation to fully disclose to debtor the possibility that the quoted fee could be increased under § 328(a) or § 330. For their failure to do so, Appellees' compensation must be limited to the hourly fees quoted. Any other holding would make the quotation of a fee to a debtor meaningless. The Bankruptcy Court stated that it did not feel bound by any contract made by the parties (Record—Vol. II, Page 169). This court does not agree with such a conclusion where there was no prior disclosure to the client or the Bankruptcy Court. A contrary holding would mean that the Bankruptcy Court's ultimate determination of a fee in a Chapter 11 case is always to be unaffected by prior discussions or arrangements with the debtor and that the debtor and the potential attorneys could not place a limit on the compensation to be sought by application. This court cannot conclude this to be the law.

This court does not suggest, in any way, that Appellees deliberately violated

any obligation to their client. References to the fiduciary relationship relate to objective responsibilities, not to matters of integrity. Notwithstanding the Bankruptcy Court's general authority to review attorney fees, Appellees could not petition for fees in excess of the amounts discussed with their client, whether barred by contract, estoppel or fiduciary obligation. The court refers to the fiduciary relationship only to further explain the stringent burden which Appellees have.

It is not necessary for the court to determine whether there was a failure to disclose under § 329 or Rule 219 which would preclude excess compensation to the Appellees. These provisions reinforce the obligation to disclose. However, notwithstanding these provisions, the facts of this case would preclude payment of excess fees to Appellees.

In view of the foregoing holding, it is not necessary to address the *Constitutional* issue.

The Appellees' services obviously contributed greatly to the stockholders and creditors of Warrior. The services were performed in an expeditious and highly professional manner. This was obviously recognized by the Bankruptcy Court. In the absence of the April 15, 1980 Board meeting, this court would affirm. The discussion at that meeting leaves this court no choice. [*See generally, Hogan v. Wright,* 322 F.2d 83 (6th Cir. 1963); *Hamilton v. Ford Motor Co.,* 636 F.2d 745 (D.C.Cir.1980); *Solar Research Corp. v. Parker,* 221 So.2d 138 (Fla.1969); and *Centurian Corp. v. Ryberg, McCoy & Halgren,* 588 P.2d 716 (Utah 1978).]

An order will be entered modifying the award of attorney fees by the Bankruptcy Court. The award will be limited to the hours worked proved to the Bankruptcy Court by Appellees at the rates stated in the April 15, 1980 Board meeting. Within five days after the entry of this opinion, Appellant will submit to the court and serve on Appellees a proposed order consistent with this opinion. Appellees shall have five days thereafter to file objections to the form of the proposed order. The court will thereafter enter an order.