**In re Lowell D. NELSON and Juanita M. Nelson, Debtors.**

**No. 184–00831.**

United States Bankruptcy Court, C.D. Illinois.

Feb. 27, 1989.

William L. Needler & Associates, Ltd. Chicago, Ill., for debtors.

Churchill & Churchill, Moline, Ill., for State Bank of Orion, Creditor.

Eagle & Eagle, Rock Island, Ill., for R & I Feeds, Inc. Creditor.

Charles E. Covey, Peoria, Ill., trustee.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter came on to be heard upon the Amended Application for Final Fee Allowance and Reimbursement of Costs in the amount of $61,977.33 filed by Debtors' current attorney. The Debtors originally filed a Chapter 11 proceeding on April 25, 1984, and several days later Debtors' original attorney was approved as attorney of record. Several months later, in October of 1984, the Debtors' original attorney was replaced by the Debtors' current attorney. The reason given for the replacement was that the Debtors did not want to liquidate, as was apparently being recommended by their then attorney, and wanted to reorganize. There then ensued a lengthy and bitterly contested Chapter 11 proceeding, with the Debtors or certain of their creditors opposing any action proposed by the other. Certain creditors filed numerous motions to dismiss and motions to lift stay. One of the motions to dismiss was allowed, but was reversed on appeal. The Debtors filed six disclosure statements, none of which were approved, and various motions designed to permit the Debtors to continue to operate. At one point certain creditors proposed a partial liquidation that would permit the Debtors to continue their farming operation at a reduced level. This, too, was opposed by the Debtors. The Debtors also filed two adversary proceedings. One, No. 185–0063, was to determine the amount, nature, and extent of a claim of a major secured creditor and to set aside a conveyance as a preference. The other, No. 185–0228, was against the same se-

cured creditor and sought to subordinate the claim and for turnover of property. Both of these adversaries were decided substantially against the Debtors.

Finally in August of 1986, the case was converted to one under Chapter 7. During the course of the Chapter 11 proceeding, and in the Chapter 7 proceeding, the Debtors' current attorney filed various applications for interim fees and costs advanced, the first such application being filed on April 19, 1985. From time to time four other judges heard portions of the Chapter 11 proceedings. The last of these judges allowed the Debtors' current attorney two small payments, one on December 2, 1985, in the amount of $1,656.43 for costs, and another on April 9, 1986, in the amount of $912.42 for costs. At various times, this judge continued the hearings on fees, and in March of 1986, he indicated he wouldn't consider the issue of fees until confirmation stage was reached.

On January 5, 1989, this Court held a hearing on the Amended Application for Final Fee Allowance and Reimbursement of Costs, to which there were several objections. The Chapter 7 trustee objected on the following factual grounds: that the Chapter 11 proceeding was a relatively small one; a disclosure statement was never approved and a plan was never submitted to creditors for voting; and after liquidating the Debtors' assets, the trustee now holds only approximately $85,000.00 of which approximately $73,000.00 would be paid for taxes, leaving only approximately $12,000.00 for unsecured creditors. The trustee therefore argues that the request for fees is disproportionate to the size of the estate and the benefit that creditors receive. A major creditor also objected, taking the position that the Chapter 11 was not successful and that the amount already paid to the Debtors' first attorney ($4,556.73), Debtors' current attorney ($6,000.00), and to a consultant ($7,275.50), which total $17,832.23, is sufficient payment for the results achieved.

Citing *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), and Section 330 of the Bankruptcy Code, the Debtors' current attorney argues that his fees and costs advanced should be allowed in full because through his hard work and diligence the Debtors were able to stay in possession of their assets which generated income for payments to creditors and preserved assets of the estate which generated the approximately $85,000.00 the Chapter 7 trustee now holds.

■ This Court begins its analysis by first noting that four other judges handled the Chapter 11 proceeding and this Court did not get involved until the proceeding was converted to one under Chapter 7. Therefore, this Court's familiarity with what occurred is based upon a review of the pleadings and any applicable record. The fact that this Court was not involved with the Chapter 11 proceedings does not prevent it from ruling on the request for attorney fees and costs. *In the Matter of First Colonial Corp. of America, supra,* the court stated:

Because the lower court "has a far better means of knowing what is just and reasonable than an appellate court can have," *Trustees v. Greenough,* 105 U.S. 527, 537, 26 L.Ed. 1157, 1162 (1881), district courts and bankruptcy judges have broad discretion in determining the amount of attorneys' fees to award as compensation for services performed in connection with bankruptcy proceedings, and their exercise of that discretion will not be disturbed by an appellate court absent a showing that it was abused. *In re Bemporad Carpet Mills, Inc.,* 434 F.2d [988] at 989 [ (5th Cir.1970) ]; *Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d [429] at 432 [ (5th Cir. 1968) ]; *Calhoun v. Hertwig,* 363 F.2d 257, 261 (5th Cir.1966), *cert. denied,* 386 U.S. 966, 87 S.Ct. 1047, 18 L.Ed.2d 116 (1967); *See* 3A J. Moore & L. King, Collier on Bankruptcy, para. 62.12[4] (14th ed. 1975). The fact that much of the work for which the attorneys for the trustee desire compensation was performed before a special master appointed by the district court to hear the plenary suits, and not before either the bankruptcy judge or the district court, does not

change the scope of review. But in awarding attorneys' fees under these conditions the bankruptcy judge and the district courts "should be particularly diligent in setting forth the facts that support [their] conclusion." *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166, n. 9 (3rd Cir.1973).

■ In *In the Matter of First Colonial Corp. of America, supra,* the court also indicated that the determination of reasonable attorney's fees is a three-step process. The first step involves the bankruptcy judge ascertaining the nature and extent of the services supplied by the attorney. To this end, the attorney seeking compensation should file a statement which recites the number of hours worked and contains a description of how each of those hours was spent. In the case before this Court each application sets forth in a detailed fashion, the name of each attorney or paralegal providing service, their requested hourly rate, the total number of hours of services performed, a specific listing of dates, itemization and time of all services performed, and an itemization of costs.

The second step is to hold an evidentiary hearing if there are disputed issues of fact. In this case, a hearing was held and all interested parties were given an opportunity to present whatever evidence and arguments they wished to make. Neither side presented any evidence, but merely argued their position, primarily relying upon what can be gleaned from the filings in this bankruptcy proceeding.

The third step is for the court to determine what is reasonable compensation, briefly explaining its findings and reason upon which its award is based, including an indication of how each of the twelve factors, cited in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), affected its decision. In applying these guidelines, two additional considerations must be kept in mind. First, the strong policy of the Bankruptcy Code that the estate be administered as efficiently as possible, and second, there are a number of peculiarities of bankruptcy practice. *In*

*the Matter of First Colonial Corp. of America, supra.*

■ In *Johnson v. Georgia Highway Express, Inc., supra,* the court set forth the following twelve factors that should be considered in awarding attorneys' fees:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly.

(4) The preclusion of other employment by the attorney due to acceptance of case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

The Court now turns its attention to each of the twelve factors set forth in *Johnson,* noting that in many instances these factors are interrelated.

1. The time and labor required. The time and labor was expended. The question is whether it was "required". The bulk of it was not. The Debtors proceeded against advice not to try to reorganize and rejected a partial reorganization. Had the Debtors accepted the advice or the creditor's offer of partial liquidation the attorney's work would not have been required. This Court's observations in discussing factor No. 2 are also applicable to this factor.

2. The novelty and difficulty of the questions. There were no novel or difficult legal issues presented. What made this case difficult was the Debtors' refusal to accept liquidation and to attempt a partial reorganization. This led to an extended

and bitter confrontation between the Debtors and several of their creditors, where each action of the other was hotly contested. Although the Debtors' attorney wishes to place the blame on the creditors for the case being a difficult one, the Court believes that the case was made difficult by the Debtors. In paragraph 4 of the Debtors' response to objection, it is stated:

As this Court is well aware, a Chapter 11 case can be as easy or difficult as the secured creditors, or their counsel, wish to make it. Suffice to say that this was a difficult case. Furthermore, Mr. Nelson was not an easy client to represent in the sense that he was a proud, stubborn man who was often undecisive or even non-communicative. However, these are not matters that should now be used to penalize his former attorneys.

The Debtor was a stubborn, indecisive, and non-communicative debtor who fought for reorganization, even though from the very beginning of the case he was advised against reorganization in favor of a liquidation, and even though his creditors at one point in time proposed a partial liquidation which would permit him to continue farming on a reduced scale. While it is true that a debtor has a right to have his position strenuously presented, he does not have the right to unreasonably attempt to pursue a course of action against the advice of his attorney and then expect to have his creditors pay for his error in judgment. Furthermore, an attorney cannot continue to represent an unreasonable client and likewise expect that his fees will be paid by the creditors. In a bankruptcy, an attorney must exercise some degree of judgment as to the validity of his client's position and not race pell-mell into a defense of his client based upon his client's unreasonable expectation and then ask that the creditors pay for his representation. This is not a case where the attorney is seeking reimbursement from his client. In this case the attorney is seeking payment from his client's creditors.

3. The skill requisite to perform the legal service properly. As previously noted, there were no novel and difficult legal or factual issues. The difficulty arose from the attitude of the Debtors and the creditors. To represent the Debtors in this matter did not require any special skill, other than a dogged determination never to call it quits.

4. The preclusion of other employment by the attorney due to acceptance of the case. The Debtors' attorney presented no evidence in this regard. In fact, during the course of the argument the Debtors' attorney made a vague reference to other farm reorganizations which he participated in as attorney for the debtor. Therefore, the Court can only conclude that the Debtors' attorney was not precluded from representing others.

5. The customary fee. A customary fee can be analyzed both from the basis of an hourly rate and the number of hours involved, and a total fee for similar bankruptcy proceedings. In this particular case, the senior attorney is requesting fees based upon $150.00 per hour for court time and $75.00 per hour for travel time. Other attorneys' time is computed at the rate of $90.00 or $75.00 an hour for court time and $45.00 or $37.50 for travel time. Neither the objecting creditors nor the trustee raised any issue with the hourly rate or the number of hours involved. To this Court's knowledge, the maximum highest hourly rate being charged in this division is $150.00 per hour for a senior experienced partner, and $100.00 an hour for experienced associates. Therefore, the Court concludes that the $150.00 per hour, or $90.00 or $75.00 per hour rates are reasonable.

However, the total fees and costs of $61,977.34 are excessive. This Court is not aware of any farm reorganization where the attorneys' fees have greatly exceeded $10,000.00. In most cases the total attorneys' fees for a debtor's attorney are in the area of $8,000.00 to $10,000.00.

6. Whether the fee is fixed or contingent. This factor does not need discussion, as contingent fees are not involved and the fees are based on an hourly rate.

7. Time limitations imposed by the client or the circumstances. This Court is

not aware of any time limitations imposed by the Debtors or the circumstances of the case, and no evidence was presented to justify a fee based on this factor.

8. The amount involved and the results obtained. As the Chapter 7 trustee points out, this is a relatively small Chapter 11 reorganization. The schedule reflects three priority claims of the Internal Revenue Service, Illinois Department of Revenue, and the County Collector for real estate taxes, which total $54,056.00. There were eight secured creditors with claims totalling $1,072,598.00, and nine unsecured creditors with total claims of $268,880.00. Furthermore, the results were negligible. The Chapter 11 did not get beyond the disclosure stage. Once the case was converted and the Debtors' assets liquidated, the Chapter 7 trustee recovered a mere $87,000.00. Finally, contrary to the position taken by the Debtors' attorney, very little benefit flowed from the rigid position taken by the Debtors and the services rendered by the Debtors' attorney. During the Chapter 11 proceeding the Debtors were permitted to stay in possession and to continue farming. That benefit accrued solely to them. During the course of the attempted reorganization, certain payments were made to secured creditors. But those payments were made either as adequate protection which permitted the Debtors to keep certain assets in an attempt to reorganize, or to satisfy liens as secured collateral was liquidated. The adequate protection rights accrued to the Debtors' benefit and not to creditors' benefit, as it permitted the Debtors to retain collateral in an attempt to reorganize. The Debtors' actions in liquidating the collateral was of little benefit to the secured creditors, as the secured creditors had that right and it would have occurred sooner had the Debtors recognized that liquidation was inevitable.

9. The experience, reputation, and ability of the attorneys. The Debtors' attorney presented no evidence to show his experience, reputation, and ability. In his argument the Debtors' attorney alluded to his representation of farm debtors in *Norwest Bank Worthington v. Ahlers*, —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), and made a vague reference to several other cases in other parts of the country that he had handled. Although the Debtors' attorney represented farm debtors in those cases, this Court does not believe such representation to establish a high degree of experience, reputation or ability which would justify the fee being requested. Furthermore, this Court is not aware of any other farm reorganization, Chapter 11 or 12, or any other bankruptcy proceeding that the Debtors' attorney successfully concluded in the Central District of Illinois. Finally, this Court is not aware of any scholarly publication written by the Debtors' attorney, or the Debtors' attorney's participation in activities such as Continuing Legal Education seminars which would indicate that he has been recognized by his peers as having any exceptional experience, reputation, or ability in the bankruptcy area.

10. The undesirability of the case. There was nothing in the nature of the case that made it inherently undesirable. It was a farm reorganization case similar to numerous other farm reorganization cases that have been filed, except that as previously noted, the case was difficult because it was bitterly contested. It did not involve representing a disfavored cause with a social or professional stigma attached to it.

11. The nature and length of the professional relationship with the client. This is the only time the Debtors' attorney has represented the Debtors. The length of the representation was approximately two years. Although two years is somewhat longer than it takes to conclude a farm reorganization, it is not such a longer period of time so as to justify awarding an unusual amount of fees.

12. Finally, awards in similar cases. As previously noted in discussing customary fees, an award of $61,000.00 is substantially higher than comparable fees in similar farm reorganization cases.

■ Neither the trustee nor the major creditors objected to the reimbursement of costs, nor was there any evidence presented that the travel expenses were unreason-

able or unnecessary. Considering that courts, in awarding attorney's fees, are somewhat reluctant to disallow costs, this Court concludes the attorney for the Debtors should be reimbursed for costs advanced in the amount of $2,579.79.

Having considered all of these facts, this Court FINDS:

1. That the costs advanced of $2,579.79 were for actual and necessary expenses.

2. That the requested attorney fees were for actual, but for the most part unnecessary services, and therefore they were unreasonable.

3. That based upon careful consideration of the factors set forth above, reasonable compensation for necessary representation of the Debtors should be $7,000.00, of which $6,000.00 was paid by retainer, leaving remaining fees to be paid to the Debtors' current attorney of $1,000.00.

IT IS, THEREFORE, ORDERED that: The Debtors' current attorney be paid the following:

1. $2,579.79 for costs.

2. $1,000.00 for additional attorney's fees.